May it please the Court, Craig Anderson on behalf of Officer Sean Miller. I'd like to reserve two minutes for rebuttal if I may. This is the Section 1983 Excessive Force Lawsuit where the District Court failed to grant Officer Miller qualified immunity. Taking the facts and the like most favorable to the Plaintiff, but viewing them through the eyes of a reasonable officer on scene, there is really no dispute that it was reasonable for Officer Miller to use deadly force or at a minimum the law regarding his actions was not clearly established and he would therefore be entitled to qualified immunity under that prong as well. The District Court and the Plaintiff have focused on their belief that the Plaintiff was not an immediate threat to Officer Miller. It is undisputed that the facts of this case show the following, that the Plaintiff had a weapon. He had a large stick that has been described as a club, a stick that could cause severe bodily harm and could cause severe damage to Officer Miller. It is also undisputed that the Plaintiff was the aggressor. He was the person who was charging the officer. The judge seemed to think that the officer should have used less restrictive means for longer. Can you address that? I certainly can. In both a legal sense and a factual sense. In a factual sense, what we know is that there were two taser deployments that were unsuccessful and there were some beanbag rounds that were- Two separate beanbag incidents also, right? Separate beanbag. So you have four attempts at less lethal force. What the District Court judge seemed to think was that he should have been able to run further away and keep this charade going on that had already gone on for two minutes, where the officer should have been able to keep a safe distance and been able to keep this going on. Legally, there's absolutely no obligation for Officer Miller to continue to use those types of less restrictive means once they have failed. There's no duty to retreat. There's no duty to move to pepper spray. There's no legal obligation to go to a baton. In fact, it would have been silly to go to a baton and take a smaller club against a bigger club and try to win that one. The pepper spray, obviously with the two taser deployments not having any effect at all on the plaintiff, you could objectively believe this is not going to have any effect on him as well. The reason that it became more dangerous at the time of the shooting was because Officer Miller was backpedaling. He was backpedaling rapidly and he was coming up against the building. So we know what we have there. Are there some disputed facts with respect to the backpedaling? In other words, I think there's some conflict in the record as to whether his feet had become tangled in taser wires or not. Well, the plaintiff has said that there is a factual dispute as well. Well, assume that there is. Assume that there is a factual dispute about whether his feet... It doesn't matter. That was my question. He's coming onto this concrete parking bumper that he could trip over and then plus you have the lip onto the concrete where he's now running backwards with obstacles coming into his way that he could trip and fall down. And it's undisputed that the plaintiff was somewhere between six and ten feet away from him with this stick ready to strike. There's been some insinuation that because it was not above his head that the stick was not a threat. And I don't understand why that would not make it a threat because the stick, according to Officer Miller and the other witnesses, was being waved about at waist level. And according to the eyewitnesses, who are my best witnesses because they don't have a horse in the race, they're objective, is they perceived that he was attempting to take the officer's head off, that he was flailing the stick wildly. And they all agreed that the plaintiff's desire was to cause this officer harm. Let me ask you a question about how this incident occurred. I'm not sure it's relevant, so I want to find out if you think it is. What's troublesome about this case from a great distance away, and obviously Officer Miller wasn't a great distance away, is we have a report that somebody may be committing a misdemeanor in a parking lot. Officer Miller pulls up and two minutes later, this guy is dead. OK, and so let me finish. Does it make any difference whether or not the incident could have been handled differently at the outset? No, you're moving there into tactical errors, things the officer could have done differently, which would take us into the Scott v. Heinrich, which is officers, they cannot be punished for their tactical decisions unless those tactical decisions are themselves an independent Fourth Amendment violation. So, for example, if he didn't have a right to be there, he didn't have a right to confront him, then it may be relevant. It doesn't matter whether or not he was actually committing a crime. No, it does not matter. Or how minor the crime may have been. Yes. Let me just focus you on this for a second. There's a report that the victim, the plaintiff, might be throwing rocks or waving a stick at a woman. And the officer pulls up and what happens immediately as the victim, as the plaintiff approaches him, says, get on the ground. And then the incident escalates. OK, and and everything after that, I understand your position on because after that, the the plaintiff is coming at him with a stick and they try several mechanisms to stop it and they can't stop it. So I'm I'm with you on how reasonable the officers were after that. Do we take into account how reasonable the initial encounter was or is it just not something that we look at at all? No. And I think the case that I would cite you for there is Billington versus Smith, where an officer may make poor choices in how he approaches the situation or maybe could have made some waited for backup, could have taken some of those actions. And it simply is not relevant in the analysis of whether the final act was excessive or not. In other words, once he legally confronted him, we we take this situation from there forward. Yes, because, you know, he was he was responding to a domestic violence call, which I understand there wasn't a lot going on, you know, he waving a stick, throwing some rocks potentially at a woman's leg, which is which is rather serious if you're throwing rocks at a female. And I don't mean to undermine that. But when he gets there, what he says is come stand at the front of my car. And that's when, according to Officer Miller, Greenis raises the club and screams. Doesn't he tell him in the initial encounter to get on the ground? Initially, he says, come to the front of my car. It's when he comes at him initially that he begins to yell for the next two minutes, get on the ground, drop the stick. And there's absolutely nothing wrong with that. I mean, the officer had an obligation to go investigate what was going on here. And he didn't do anything wrong by pulling up and verbally challenging. He didn't have his gun drawn. He didn't. You know, the first thing he pulls is his taser. And that's what he's being advanced upon. And so you have an officer standing there issuing verbal commands and orders, which is exactly what they're supposed to do on the force continuum. You know, it's officer presence and it's verbal command. It's the two lowest levels of force that an officer can use. So he's doing exactly what he's trained to do and exactly what he should do. Typically, when an officer does that, they don't expect to be advanced upon by someone holding a weapon. So that it's not Officer Miller's fault, to answer your question. And it really cannot be factored into this analysis. Even if it were, you wouldn't. So let's assume that he inappropriately initiated a... Even then, if the person kept advancing on him and threatening him, he would be entitled to protect himself. We then have a two-minute encounter. The case where it's not okay to do that was the city and county of San Francisco case with Alexander, where they illegally entered an apartment where there was a mentally ill person who had said, if anyone comes in here, I'm going to shoot you. And they didn't have any right to be in there in the first place. And then when the guy pointed a gun, they shot it. And that was not okay because the entry was bad. And here, it's a red herring to say that he could have approached it differently tactically. And that's where we just go to Scott B. Heinrich, where there could be other less intrusive means, but the officer doesn't have to exhibit superhuman judgment. So what issues do you think the district court thought were disputed in this case? And that's what's interesting. What the district court said is there was a dispute regarding the nature of the command. There was a dispute regarding the distance. So everyone believed it was between six and 10 feet. And the district court implied that there was a duty to retreat, that you just keep running around this parking lot till he gets tired, I guess. And there's really no law. And that's what's interesting in both the plaintiff's brief and in the district court's order is there's no case law that is clearly established that would have put Officer Miller on notice that he needed to perform those functions. In fact, the clearly established case law for purposes of this case is overwhelmingly in favor of Officer Miller, that all of the cases completely and for different reasons, they support what Officer Miller did. And even if the court did not agree with you on the first prong, you're saying on the second prong. Oh, absolutely. It's not clearly established. And therefore, the officer would be entitled to qualified immunity. Is that what you're saying? Absolutely. That's what I'm saying is I believe there are four cases that are extremely strong for Officer Miller in this case. And I really can't name a case that is bad for him in this case. The three cases that are cited... You're analyzing the things that the district court said. Well, if it's six, the district court seemed to be saying if it's six feet, it's a different analysis than if it were 10 feet. So for our purposes, we have to assume 10 feet, right? Well, we have to assume whatever the plaintiff says, how far they were apart. If there's evidence of that. Well, but there is some evidence. Somebody said, I'll go back in the record and find it. It was six to 10 feet. Well, the officer says six to seven. And one of the witness Vickers says five to seven. Okay. Then our expert said up to 10 feet. Okay. So we have to assume, since that was evidence in the record, the distance most favorable to the plaintiff's side. So we have to assume 10 feet. And that's fine because it just doesn't matter. Well, but that's the point. I mean, it seems to me, Dad, it's your argument. Your argument has to be it doesn't matter. Your argument can't be it really was six. Yeah. What we know is when someone's got a knife or a sharp edged object, that typically law enforcement requires a 21 foot rule. Here you have someone who is about six feet tall, a large man, carrying a four foot stick who's within seven to 10 feet of the officer. So what's the case law with respect to distance? Because it seems to me that if he was a mile away, you obviously couldn't shoot him. Distance would be Blanford, which was seven feet away from someone with a sword that wasn't threatening. The best case for me is not cited in the briefs. It is a law versus County of Los Angeles Highway Patrol case, where the reason that law is so good for me is because it's a blunt force object. It's not a knife. It's not a gun. It's a rock. And he's seven feet in that case. Would you file a 28 day letter if you're going to cite a case to us? Absolutely. It should have been done. I inherited this case. So it's not that what happened was law came out after the summary judgment briefing, but before the appeal. So it absolutely should have been cited. But but regardless, you have Blanford, which is which is a good case. You have Reynolds versus County of San Diego, which is a good case. And then in addition to those, you also have Billington, where the the individual has no weapon. And there was a dispute in Billington because the officer, the allegation there was that the suspect was attempting to grab the officer's gun. He never got it, but he was attempting to. And the officer had pushed away, according to some witnesses, and it created distance with the suspect. And in Billington, the court just flat out said it doesn't matter. You know, he was trying to get the gun. It doesn't matter the distance between them. I think it was a four to six foot difference. But there's certainly no clearly established law that says, hey, if you get to 10 feet, you know, you're no longer in danger because that would be ridiculous if someone can close that distance very quickly, and especially where he's backpedaling towards these obstacles that he is going to face. I guess the fact that there's no clearly established law is enough, whether if we had it to the contrary, if it was ridiculous, you'd be stuck with. Yeah, I'm stuck with a lot of stuff. And that one is not because the law is actually on the officer's favor in this case. I'm pretty decisive because I'm still waiting to see which case they would rely on. The only two cases that I could see that you could somehow fit into this box were Diorley, and that's simply because the gentleman was walking towards the officer and was not threatening. He had dropped his crossbow at that time. And perhaps Glenn versus Washington County. But in both of those cases, the individuals were not threatening the actual officer. You know, they would, you know. Would you like to reserve time and then you can respond to what they say is clearly established? I would. Thank you very much, Your Honors. Thank you. Good afternoon, everyone. And my name is Dale Gallipo, and I'm representing the appellees. And I want to thank the Ninth Circuit and the school for having this here. This is probably the only time I can say I actually went to Stanford. And it's an honor to be here. And I don't think I've ever been surrounded by such brilliance on all sides. At least on your left and right. On all sides. In any event, as we pointed out in our pleadings, we obviously agree with the finding and the ruling of the district court. First of all, and we feel very importantly, this is a deadly force case. There's an abundance of case law that predated this case that talks about when officers can use deadly force. And it's very clear that they can only use deadly force in an immediate defense of life or immediate serious bodily injury. I mean, there's cases that we cited, such as Curnow v. Ridgecrest, where a gun in someone's hand is not enough. A knife in someone's hand is not enough. It has to be an immediate threat of death. And that is why the distance and other factors I'll mention in a moment are very important. Well, if this court were to determine that, I'm just saying this hypothetically, viewing all facts in the light most favorable to you, Brenes, posed an immediate threat to Officer Miller, what case law indicates that other tactics should have been considered? Well, first of all, we have two arguments. One argument is that he should have never shot him, based on the disputed and undisputed facts. First of all, so the record is clear, and we cited to this in our paperwork, an officer who was present, Chamberlain, said the distance was 10 to 15 feet. Okay, let's assume whatever the distance. Let's assume it's 15 feet. Assume the distance most favorable to your client. And we know in two minutes, and the officers admit this, he never swung this or attempted to use this as a weapon in any way against any officer. Well, but here are the facts that are undisputed. So tell me how you get around these. Your client's a large, the decedent is a large person. No larger than the officers. Okay, 225 pounds. I'm not sure of the weight. That's what the record suggests. Holding probably what is a cane, but certainly an object that's capable of inflicting damage. Capable, but a non-traditional weapon. Okay, a non-traditional weapon. Gets tasered twice and keeps coming towards the officer. Gets beanbagged, I don't know if that's a verb, beanbagged twice and keeps coming towards the officer. Those facts I think are undisputed. I believe you're correct. Although there's a dispute as to the timing of one of the beanbag rounds. But at least after these four events occur, the decedent is still advancing towards the officer. I believe that is true, Your Honor. Let's assume the officer is 10 to 15 feet away at that point. And the officer fires at that point. Those facts are all undisputed. And I don't know whether it's 10 feet or 15 feet or something. But we have to assume for purposes of this motion, it's 15. Well, we do if the record reflects that. It does. I'm not positive, but we'll look. Yeah, because I have the excerpts and it's in two different places. It's in Officer Chamberlain's statement, his deposition, and their police practice experts' deposition as well. And I think... Could you just give us the ER sites? Yes, ER 220 and 221. And ER 276 and ER 286 all indicate 10 to 15 feet. And maybe even more importantly, at ER 271, and this is from Chamberlain, he says before the shot and at the time of the shot, that the decedent was not doing anything threatening with that stick. Okay, but still... But you agree still advancing? Correct. Okay, so walking, advancing. Assume all those... Assume the facts that you've just stated. Tell me what clearly established law, what case when we're doing the second prong of qualified immunity, would tell the officer under that circumstance he did not have the right to use deadly force? Well, starting with Graham v. Connor, Tennessee v. Garner, and all the cases that it looked at deadly force as a particularized use of force. But aren't those first prong cases? It is clearly established that one may not use deadly force unless they are being threatened. Well, it's more than threatened. You can state the first prong. I'm with you. You went on the first prong for purposes of my question. All right. The question is whether an officer looking at our case law or the Supreme Court case law would know that under the second prong, under this set of facts, he was not entitled to use deadly force. Yes. Tell me what case. As your opponent asked, what's your best case on distance and shooting? Well, twofold. Maybe one of our best cases, Colonel, where a guy with a gun in his hand is not enough to shoot him, even at short distance. Every one of their cases that they cited, which we mentioned in our brief,  trying to stab the officer with a knife, trying to run over the officer with a car, every one of their cases is so clearly distinguishable. Well, but here's my problem. So their cases may be wrong, but the second prong of qualified immunity requires that we have decided a case with the Supreme Court that would notify this officer that what he was doing under these circumstances was inappropriate. Wrong words, but that's OK. So tell me what case, if he were standing there with a casebook at the time of this incident, the officer could look at and say, oh my God, the Ninth Circuit has said 11 feet and a knife is not enough to shoot. So tell me what's your best case in that respect? Probably one of the best ones that come to my mind is the case I mentioned, Colonel V. Ridgecraft. The important doctrine, because we don't need a case on all fours. You're never going to get a case exactly on all fours. The important concept is it has to be. But the second prong says it has to be clearly established law. And so it's got to be something that, it's not something that the officer has to listen to 30 minutes of oral arguments and different positions. What would put a reasonable, what would put an officer on notice that what he's doing is wrong? As noted in the declaration of police practice expert Roger Clark, which is the reason part of the motion, deadly force can only be used in an immediate defense of life. All the cases say that. That's the first, that's the first prong. No, I don't, I believe that's the, that's the law. That's the clearly established law. That's the first prong is the clearly established law. We agree with each other. My question, but that's not enough in qualified immunity cases. It can be clearly established that you can only use deadly force to protect yourself. The question is whether an officer looking at our case law would have advanced, no, this isn't, we didn't make this up. The Supreme Court did. It may be terrible law. But whether an officer looking at our case law could say, yeah, I know that I can't do this because the Ninth Circuit said so, or the Supreme Court said so. And so move from generality to specifics. Because the officer under these facts, and you got to take all our facts. So you have no serious crime, no felony, nobody injured. The rocks were being thrown at a sign, not a person. He's never charging. He's never running. He never swung at the officer. Well, you just said it was undisputed that he was advancing. Walking. And that's very important. He never ran or charged or raised it over his head or held it with two hands or swung it or ever attempted to use it as a weapon at any time. And at the time he was shot, their own officer says he was not holding it in a threatening way or attempting to swing it or using it as a weapon at any point. 15 feet away from him, the officer had 12 feet to back up. He had other less than lethal options. Three officers had their gun pointed at him. Only one shot. Because the other two officers clearly, at least an argument could be made, realized it would be unjustified to shoot and kill this man when he was 15 feet away, holding a stick, not trying to swing it. And he was walking towards them at a walking pace. This officer had other options. Were the other officers in a different position of danger than this officer? My understanding, well, no, my understanding of the facts is that this officer was backing up to a point where he would be enclosed, where he couldn't, as opposed to the other officers were on his side. That's correct. But there's a dispute as to the distance because he had 12 feet to go. He had a car to his right, which he could have take cover on. He had pepper spray. He had a police baton. There were three officers against one person who had never tried to use that stick as a weapon. Obviously, an implication could be that perhaps this person have some issue going on. Could a reasonable officer think that nothing would stop this person after you've done two beanbag rounds and and two tasing? No, I don't think it's reasonable to say if less than lethal is appropriate and for some reason it doesn't work, we can then kill the person. So what's your best case on that? Because Kurnow isn't all that helpful to you. Kurnow involves somebody who's fleeing. And they shoot somebody who's fleeing, who's not facing the officer at the time. And the court says you can only shoot a fleeing felon if the felon poses some danger to you. The fact that he has a gun, as everybody in Arizona and Nevada appears to have, and isn't pointing it at you, doesn't entitle you to shoot him. So give me your best case in terms of somebody advancing on the officer. I don't think there is a case that's going to say... Well, there may not be. Give me your best one. You must have one you like the best. I would say every case we cited on deadly force, even their cases if you read them, say there has to be an immediate defense of life. You cannot shoot someone. Sometimes you don't need a case if it falls within the obvious. You have someone 15 feet away that has this stick, is not trying to swing it, is not trying to hit anyone, and you're going to kill him. Look, it may be terrible police practice. That's a separate issue. This is not a negligence case. It's a 1983 case. We're looking at qualified immunity. There was a case earlier this year called A.K.H. versus Tustin, where the officers are approaching the guy who's acting very strange. He's acting very weird, walking down the street with his hand in his pocket. And he's told repeatedly, get your hand on the pot and get on the ground, get on the ground, get on the ground. And he doesn't. And he steps forward towards the officers and he's shot and he's killed. And I think summary judgment was granted for the officers in that case. And this court reversed. And it's a published opinion. That is correct. That is a case that basically talks about the standard of using deadly force. And I think that there's several published opinions. There's another one that recently came out called the Estate Emanuel Diaz, which is another published opinion. And I think what the cases are saying, and it should be this way clearly, is you can only use deadly force in very limited circumstances. And even the training, to answer your question, Judge Hewitt, even the training that was discussed as part of the motion and the officers are trained, the deadly force can only be used as a last resort in the direst of circumstances, only in an immediate defensive life situation, only when no other reasonable options are available. What relevance does it have here and maybe not have any? That these four incidents occurred beforehand. In other words, nothing seemed to stop this gentleman. I don't think they have any importance because... Well, certainly if they weren't there, you'd have a much better case. I would say two issues. First of all, you were asked, someone asked, does the severity of the crime matter? Of course it does. It's one of the factors to consider under Graham, and it's part of the model jury instruction. What are the officers responding to? Are they responding to someone with a gun who's threatening people or someone with a knife who's trying to harm people? Or are they responding, in this case, I don't even know if it was a crime, throwing a rock at a sign, maybe it was, I don't know. That's what they are responding to. So the fact that they were using less than lethal options shows that that was the appropriate force. I'm not blaming the officers for that. But my question is different. The less than lethal options didn't stop the decedent from advancing towards the police officer. We all agree on that. We agree on that, correct. OK. At least up to that point. Up to that point. Up to that point. So the fact that four non-lethal options have been tried, how does that factor into the qualified immunity? I don't think it does. Because I don't think it then gives the officers a pass to say, well, we tried less than lethal. That didn't work. So we're just going to kill the person now. Well, but it's got to be a factor in terms of what's clearly established. Because if other cases that you're citing, nothing less than lethal was tried previously, that case wouldn't stand for the same proposition. So here you do have an undisputed situation where four attempts of less than lethal were attempted. And they didn't stop the person. And, well, even you could say more than four. You've got two tastes. You've got two of that. You've got verbal commands. And he's physically advancing. But I take it, though, your answer to that question would be, well, if the officer was actually threatened or endangered, then it could become very relevant as to whether beanbags, he should have used beanbags, he should have used tasers. You're saying here is a factual question as to whether the officer was ever in that immediate harm at all. Right. And that's the heart of what we're trying to say. And I think that's what the district court was trying to say. It was trying to say these are issues that a jury has to decide. The district court looked at this very carefully, the video and all the evidence. It understood both sides. And I think we don't give any deference to the district. I understand that. But I think just looking at this de novo, this is something a jury is going to have to decide. There's a lot of factual disputes in the case. Was he threatening them with this object? Was he trying to use it as a weapon? What was the distance? All right. Do either of you have additional questions? All right. Then you need to wrap up because you're actually in overtime. I apologize. No, that's all right. I'm just keeping you advised of the time. In summary, I would say that all the points being made, I think, are very valid points, including by my opposing counsel. But this is clearly a case with multiple disputed facts that has to be decided by a jury. Thank you for your argument. It's a little disingenuous to say that there was not an immediate threat. There were three eyewitnesses, citizens with no involvement. McVicker said that he looked like he was trying to take the officer's head off at the club. Wooten said he was dead set on causing that officer harm. Santana said he was flailing, swinging it wildly at the officer. To say that you're being pursued by someone for two minutes, after you've used two minutes, as you pointed out, Judge Callahan, of less than lethal alternatives, and that person is not going to stop. That is the key issue of this case. He's continuing to advance. In Blanford, the suspect holding the sword wasn't even advancing on the officers. He just showed intent to go into a home. But the mere fact that he ignored verbal commands and showed intent to go into a residence justified the officers using deadly force. Although, with 20-20 hindsight, it was a horrible decision. It was his own home, and nobody was in there. But when you look at those facts, which those officers were found to have acted reasonably, not even given clearly established, they were just found to have acted reasonably, this case is all the more easy. Because everyone that perceived this situation felt that the officer was in harm. They felt like he was in immediate danger. And the fact that they didn't raise the stick over his head didn't mean that he wasn't intent on using it. Everyone felt like he was approaching that officer to use the stick. Really doesn't matter what people felt. It matters what facts we know. Well, it matters that the eyewitnesses matter because it goes to the reasonableness. Three people perceiving this event. Well, the question is what a reasonable officer would have thought. And when you have someone coming at you with a club-type stick, I think a reasonable officer could feel threatened. And we keep going back to this severity of the crime. The district court said it wasn't a very serious crime. Plaintiff's counsel just said it wasn't a serious crime. They're right, until he advanced on the officers. Then it became a felony assault on a police officer, and it became a very serious crime. You can stop a jaywalker, very minor. If he pulls a gun, you've now got a serious crime. And so to say that this was not a serious crime at the time he shot is wrong. It was an extremely serious crime. It was a felony assault on a police officer, which violates NRS 200.471. So that prong also weighs in the officer's favor. So when you look at these factors and you compare these cases, the officers did what this circuit has asked officers to do. Use verbal commands. If you have the opportunity, use less than lethal. Try to exhaust all available avenues to not use deadly force if you can. But at the end, this court is clear that when you're within, I guess it's an undefined zone of danger, which we know in eight feet in Lowell was okay, in eight feet in Blanford was okay, and in Billington it was four to six feet. Even if we take 10 to 15 feet, there would be nothing telling this officer, you can't shoot at that point. All right, I need you to wrap up because you're moving into overtime. Thank you very much, Your Honor. Thank you both for your helpful arguments.
judges: Callahan, Hurwitz, Owens